JUDGE SWEET

12 CIV 3745

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT KASZOVITZ, Individually and On Behalf of All Other Persons Similarly Situated, | : **Civil Action No.:** |
| Plaintiff, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| QIAO XING UNIVERSAL RESOURCES, INC., RUI LIN WU, ZHI YANG WU, AIJUN JIANG, and JIUJIU JIANG, | : |
| Defendant. | : |

*RECEIVED*
*MAY 10 2012*
*U.S.D.C. S.D.N.Y.*
*CASHIERS*

## CLASS ACTION COMPLAINT

Plaintiff Robert Kaszovitz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Qiao Xing Universal Resources, Inc. ("Qiao Xing" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all

persons other than defendants who purchased Qiao Xing securities between August 23, 2010 and April 13, 2012, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.       Qiao Xing, through its subsidiary, mines and processes rare metal and various base-metal ores, including molybdenum, copper, lead and zinc.

3.       On April 16, 2012, NASDAQ halted trading of Qiao Xing securities for failing to sufficiently satisfy "NASDAQ's request for additional information."

4.       On April 20, 2012, the Company disclosed that its Audit Committee commenced "an internal investigation into a transfer of funds from a Company subsidiary's bank account to an account controlled by the Company's former Chairman," Defendant Rui Lin Wu.  In addition, the Audit Committee is also reviewing "certain transactions involving the pledge or transfer of Company assets and to confirm cash balances of the Company's bank accounts."

5.       Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's Chairman was improperly transferring funds from at least one subsidiary's bank account to an account controlled by him; (2) the Company improperly conducted transactions that pledged or transferred assets from its bank accounts; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

9.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as Qiao Xing's principal place of business is located within this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff Robert Kaszovitz as set forth in the attached certification purchased Qiao Xing securities at artificially inflated prices during the Class Period and has been damaged as a result of the revelation of the Company's fraud.

12.     Defendant Qiao Xing is a British Virgin Islands corporation, with its principal place of business located at Qiao Xing Science Industry Zone, Tang Quan, Huizhou, China

516023. Qiao Xing's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "XING."

13.     Defendant Rui Lin Wu ("R. Wu") served as the Company's Chairman of the Board of Directors ("Board") and Chief Executive Officer ("CEO") at all relevant times through November 21, 2011. Defendant R. Wu is the father of Defendant Z. Wu.

14.     Defendant Zhi Yang Wu ("Z. Wu") has served as the Company's Chairman of the Board and CEO since November 22, 2011. Prior to Defendant Z. Wu's appointment as Chairman and CEO, he served as the Company's Vice Chairman of the Board. Defendant Z. Wu is the eldest son of Defendant R. Wu.

15.     Defendant Jiujiu Jiang ("J. Jiang") has served as the Company's Chief Financial Officer ("CFO") since May 2, 2011.

16.     Defendant Aijun Jiang ("A. Jiang") served as the Company's Chief Financial Officer at all relevant times through April 2011.

17.     The defendants referenced above in ¶¶ 13 - 16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     From the Company's inception through April 6, 2009, Qiao Xing was principally engaged in the manufacturing and sales of telecommunication terminals and equipment, including mobile phone handsets as well as corded and cordless telephone sets in China. The Company engaged in the original design and manufacturing of corded telephones, designed and manufactured to the customer's requirements and instructions, marketed under the customer's designated brand name or without a designated brand name.

4

19.    The Company, formerly known as Pastiche Investments Limited, was incorporated as an international business company under the International Business Companies Act of the British Virgin Islands on December 6, 1994.

20.    In 2009, the Company transitioned its business focus from telecommunication terminals to the mineral resources industry. In April 2009, the Company acquired China Luxuriance Jade Company, Ltd. ("China Luxuriance" or "CLJC") to enter the molybdenum mining and processing industry. In July 2009, the Company commenced commercial production of molybdenum concentrate at its molybdenum mine.

21.    As of June 30, 2011, the Company owned 55.6% of Qiao Xing Mobile Communication Co. Ltd. ("QXM"), an international business company incorporated in the British Virgin Islands on January 31, 2002. QXM owns 96.55% of CEC Telecom Co., Ltd. ("CECT"). In addition, the Company owns 100% of CLJC, which is the sole shareholder of China Huizhou Taiherui Information Technology Co., Ltd. ("Taiherui"). Taiherui is the sole shareholder of Chifeng Zhongtai Mining Company Ltd. ("Zhongtai"). Zhongtai owns 34.53% equity interest in Chifeng Aolunhua Mining Co., Ltd. ("Aolunhua").   Zhongtai also owns the right to receive the 100% expected residual returns from Chifeng Haozhou Mining Co., Ltd and owns the 100% equity interest in Xinyuan.

**Materially False and Misleading
Statements Issued During the Class Period**

22.    On August 23, 2010, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2010. For the quarter, the Company reported net income of $10.1 million, or $0.12 diluted EPS and revenue of $28.6 million, as compared to a net loss of $3 million, or ($0.10) diluted EPS and revenue of $75 million for the same period a year ago.

23.     On September 10, 2010, the Company issued a press release announcing its financial results for the first half of 2010.  For the first six months of 2010, the Company reported net income of $14.8 million, or $0.17 diluted EPS and revenue of $68.7 million, as compared to net income of $26.9 million, or $0.44 diluted EPS and revenue of $168.5 million, for the same period a year ago.

24.     On December 7, 2010, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2010.  For the third quarter, the Company reported net income of $300,000, or $0.00 diluted EPS and revenue of $55 million.

25.     On December 23, 2010, the Company issued a press release announcing "that its wholly owned subsidiary has signed a definitive agreement with Chifeng Xingu Mining Co., Ltd. (Chifeng Xingu"), a non-affiliated third party, to acquire the 100% equity interest in Balinzuo Banner Xinyuan Mining Co., Ltd. ("Xinyuan" or the "Mining Company") for RMB588 million (US $88.4 million) in cash."  The press release further stated the following, in relevant part:

> According to the Independent Technical Review ("ITR") issued by John T. Boyd Company, one of the largest independent consulting firms in the world serving the mining, financial, utility and related industries, the Xinyuan Lead-zinc-copper Mine is verified to have ore reserves of 9,749,000 tons, which primarily contains 1.44% lead, 2.64% zinc and 0.59% copper.
>
> The ITR also evaluated the net present value (NPV) (15% discount rate was applied) of the Mine based on a production capacity expansion plan. The Purchase Price was negotiated based on the formula determined in May 2010, when the letter of intent was signed and when commodity prices were at relatively low levels, and was determined by applying a discount to the NPV.
>
> The Mine, with well-developed infrastructure, including water and power supplies as well as transportation, and an experienced technical and management team, started operation in March 2010 and had processing capacity of 500 tons of ores per day in June 2010. It is expected that its processing capacity will be improved significantly up to 2,000 tons of ores per day by the middle of 2011 (the "Capacity Expansion Plan"). Should the Capacity Expansion Plan be fulfilled, the remaining life of the Mine would be around 18 years. The Mine will produce lead, zinc and copper concentrates to supply smelters in Chifeng and surrounding areas

6

in China. In addition, silver and cobalt are also expected to be recovered in commercial quantities, as part of the main concentrate products.

26.    On January 5, 2011, the Company issued a press release announcing "that its subsidiary (the "Subsidiary") has placed the winning bid and completed the acquisition of a 34.53% equity interest in Chifeng Aolunhua Mining Co., Ltd. ("Aolunhua") for RMB 185 million (US $28 million) from a local Chinese government agency."  The press release further stated the following, in relevant part:

> The consideration for the bid will be paid in two cash installments within six months. With the cash in hand, cash flow to be generated from our three in-operation mining projects as well as some bank loans (when necessary), we believe that we will be able to pay the purchase price as scheduled. Given our financial condition and reputation in China, we believe that bank loans will be available to us if we need them.

> Aolunhua owns an open-pit copper-molybdenum mine (the "Mine" or "Aolunhua Mine") covering 14.38 square kilometers. The Mine is located in Ar Horqin Banner, in Chifeng City in the Inner Mongolia Autonomous Region, and has economical access to transportation, water, and electricity. According to a domestic technical report, the Mine has reserves of 372.9 million tons of ore that contains 159,293 tons of molybdenum metal at a grade of approximately 0.0663%, as well other byproducts such as 26,000 tons of copper and 100 tons of silver metal. The Mine's designed annual processing capacity is 4.29 million tons of ore, which can yield 5,000 tons of molybdenum concentrate and 5,000 tons of copper concentrate on average grades basis. Commercial operation began in September 2009 and reached a daily processing capacity of 15,000 tons of ore by the end of 2009. In 2010, the Mine processed a total of 4.49 million tons of ore, which yielded 4,496 tons of 53.43% molybdenum concentrates (which contained 1,968 tons of molybdenum metal), and 2,861 tons of copper concentrates (which contained 515 tons of copper metal and 2.8 tons of silver metal).

27.    On May 18, 2011, the Company issued a press release announcing unaudited financial results of its mining business for the fourth quarter and fiscal year ended December 31, 2010. The press release stated the following, in relevant part:

> For the fiscal year 2010, sales revenues and net income generated from the mining business were RMB300.4 million (US$45.5 million) and RMB90.6 million

(US$13.7 million), compared to RMB193.9 million and RMB64.2 million, respectively, for the fiscal year 2009. During the fourth quarter of 2010, the Company's Chifeng Haozhou Mining Company Ltd. ("Haozhou") conducted comprehensive plant maintenance and improvements which caused a slight decline in molybdenum concentrate production in the fourth quarter of 2010. However, this was offset by higher quarter-over-quarter average selling prices, resulting in net income of RMB22.4 million (US$3.4 million) in the fourth quarter, consistent with the third quarter of 2010. Following these improvements, Haozhou has now reached its full production capacity of 1,800 tons of ore per day, or 540,000 tons of ore on an annual basis.

"Our mining operations achieved significant growth in 2010. With our newly acquired Xinyuan lead-zinc mine and Aolunhua copper-molybdenum mine starting to contribute to our financial results this year, we expect the growth of our mining business to continue to accelerate in 2011 and beyond," commented Mr. Ruilin Wu, the Company's Chairman and Chief Executive Officer. "We continue to implement our strategy of becoming a pure-play resources company and are currently considering options to divest of our remaining telecommunications business. We expect to formalize and announce our final decision in June 2011."

28.     On May 31, 2011, the Company issued a press release announcing financial results for the fiscal year ended December 31, 2010. For the year, the Company reported a net loss of $8.4 million, or ($0.09) diluted EPS and revenue of $175 million, as compared to a net loss of $38 million, or ($0.61) diluted EPS and revenue of $268 million, for the same period a year ago.

29.     On July 15, 2011, the Company filed an annual report for the period ended December 31, 2010 on Form 20-F with the SEC, which was signed by Defendant R. Wu, and reported the Company's annual financial results and financial position. In addition, the Form 20-F contained signed certifications by Defendants R. Wu and J. Jiang, stating that the financial information contained in the Form 20-F was accurate and that they had disclosed any material changes to the Company's internal control over financial reporting.

30.     On November 22, 2011, the Company issued a press release announcing that Defendant Z. Wu was appointed to serve as Chairman of the Board and CEO, replacing

Defendant R. Wu, who resigned his positions as the Company's Chairman and CEO, effective November 21, 2011. In addition, the Company announced that Kaisong Xiang was appointed to serve as a director, replacing Xiufeng Shi who also resigned effective November 21, 2011 as well.

31.     On January 19, 2012, the Company issued a press release announcing the appointment of Crowe Horwath (HK) CPA Limited as its independent registered public accounting firm, replacing Crowe Horwath LLP.

32.     The statements referenced in ¶¶ 22 - 31 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) the Company's Chairman was improperly transferring funds from at least one subsidiary's bank account to an account controlled by him; (2) the Company improperly conducted transactions that pledged or transferred assets from its bank accounts; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

### THE TRUTH BEGINS TO EMERGE

33.     On April 16, 2012, NASDAQ halted trading of Qiao Xing securities at $0.635 per share due to the Company's failure to fully satisfy "NASDAQ's request for additional information."

34.     On April 20, 2012, the Company disclosed "that its Audit Committee determined to commence an internal investigation into a transfer of funds from a Company subsidiary's bank account to an account controlled by the Company's former Chairman, Wu Rui Lin, in June 2011." The Company also disclosed the following:

The transaction was undertaken without notice or approval of the Audit Committee or Board of Directors, and the transaction was recently reported to the Audit Committee in connection with the preparation of the Company's year-end financial statements. The Audit Committee has ordered immediate return of the funds. In addition, the Company informed NASDAQ and the U.S. Securities and Exchange Commission (the "SEC") of the matter under investigation and will promptly report its findings back to NASDAQ and the SEC. The Audit Committee also decided to review certain transactions involving the pledge or transfer of Company assets and to confirm cash balances of the Company's bank accounts. NASDAQ has suspended trading in XING's stock as of April 16, 2012.

Also, XING announced that Dr. Edward Tsai, director and Chairman of the Audit Committee, has resigned as of April 18, 2012. Dr. Tsai's resignation is occasioned by his disagreement with the other directors of the Company on the conduct of the internal investigation referred to above. XING would like to thank Dr. Tsai for his service and regrets the loss of his contributions to the board.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Qiao Xing securities during the Class Period (the "Class"); and were damaged thereby. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Qiao Xing securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Qiao Xing or its transfer agent and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Qiao Xing;

- whether the Individual Defendants caused Qiao Xing to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Qiao Xing securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

11

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Qiao Xing securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and Qiao Xing securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Qiao Xing securities; and (iii) cause Plaintiff and other members of the Class to purchase Qiao Xing securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Qiao Xing securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Qiao Xing's finances and business prospects.

47.     By virtue of their positions at Qiao Xing, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Qiao Xing, the Individual Defendants had knowledge of the details of Qiao Xing's internal affairs.

49.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Qiao Xing. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Qiao Xing's businesses, operations, financial condition and prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Qiao Xing securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Qiao Xing's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Qiao Xing securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

50.     During the Class Period, Qiao Xing securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and

misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Qiao Xing securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Qiao Xing securities were substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Qiao Xing securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of Qiao Xing, and conducted and participated, directly and indirectly, in the conduct of Qiao Xing's business affairs. Because of their senior positions, they knew the adverse non-public information about Qiao Xing's false financial statements.

15

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Qiao Xing's financial condition and results of operations, and to correct promptly any public statements issued by Qiao Xing which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Qiao Xing disseminated in the marketplace during the Class Period concerning Qiao Xing's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Qiao Xing to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Qiao Xing within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Qiao Xing securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of Qiao Xing. By reason of their senior positions, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Qiao Xing to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Qiao Xing and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Qiao Xing.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 10, 2012

**POMERANTZ HAUDEK
  GROSSMAN & GROSS, LLP**
Marc I. Gross
Jeremy A. Lieberman
Gustavo F. Bruckner
100 Park Avenue, 26th Floor
New York, New York 10017-5516
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ HAUDEK
  GROSSMAN & GROSS, LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

**LAW OFFICE OF**
  **JACOB T. FOGEL, P.C.**
Jacob T. Fogel, Esq.
26 Court Street, Suite 908
Brooklyn, NY 11242

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, Robert Kaszovitz, make this declaration pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Qiao Xing Universal Resources ("XING"), and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase XING securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased XING during the class period, including providing testimony at deposition and trial, if necessary.   I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in XING securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

{00044273;1 }

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___May 07 2012___ , at ___Akron My___
          (Date)                      (City, State)

_____
(Signature)
ROBERT KASZOVITZ

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|------|------------------|------------------|-----------------|
| 02/22/2011 | Purchase | 10,000 | $2.50 |
| 12/30/2010 | Purchase | 1,000 | $2.83 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |